UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AEGON STRUCTURED SETTLEMENTS, INC.,
and MONUMENTAL LIFE INSURANCE
COMPANY,

        Plaintiffs,

   v.

VIRGINIA YOUNG HICKS, THELMA YOUNG
FULLER, and ESTATE OF BERNICE YOUNG,
by and through CHARLES E. YOUNG, Personal
Representative,

        Defendants.
                                         /

CASE NO. 2:10-CV-14996
JUDGE PAUL D. BORMAN
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION: The Court should grant summary judgment to the Estate of Bernice Young.

II.    REPORT:

A.    *Background*

This is an interpleader action brought pursuant to FED. R. CIV. P. 22 and 28 U.S.C. § 2361. The basic historical facts are not in dispute. In September 1987, Richard Young, now deceased, settled a personal injury lawsuit. The settlement obligation was originally assigned to Capital Assignment Corporation and funded by an annuity issued by Commonwealth Life Insurance Company. The obligation was later assigned to plaintiff Aegon Structured Settlements, Inc. (ASSI)

and funded by an annuity issued by plaintiff Monumental Life Insurance Company.[1] Bernice Young, Richard's mother, was the designated beneficiary under the annuity. *See* Interpleader Compl., ¶¶ 9-12. Bernice[2] became entitled to all payments due on the annuity following Richard Young's death in July 1989. *See id.*, ¶ 13.

In May 2008, John Young, Bernice's son, notified Monumental Life that he had been appointed power of attorney for his mother. *See id.*, ¶ 14 & Ex. 2. In August 2008, however, Bernice sent a letter to Monumental Life revoking John's power of attorney. *See id.*, ¶ 15 & Ex. 3. On September 16, 2008, the Wayne County Probate Court entered an order deeming Bernice competent to handle her own affairs. *See id.*, ¶ 15 & Ex. 4. In July 2009, Bernice submitted a change of beneficiary form to Monumental Life designating her estate as the beneficiary of any remaining payments due under the annuity. That same month, she assigned $60,000 of the $100,000 lump sum payment due on October 8, 2017, to Settlement Funding, LLC. *See id.*, ¶¶ 16-17 & Ex. 5-6. In February 2010, Bernice submitted a change of beneficiary form designating her daughter, Virginia Young-Hicks, as the beneficiary of the annuity. *See id.*, ¶ 18 & Ex. 7. Virginia informed Monumental Life in July 2010 that she had power of attorney for her mother. *See id.*, ¶ 19.

Bernice died on September 5, 2010. Her son, Charles Young, was appointed the personal representative of the Estate. *See id.*, ¶ 20 & Ex. 8. At the time of Bernice's death, a total of

---

[1] The annuity provided for the following monthly and lump sum payments to Richard Young: (1) $1,200.00 per month for the period of October 8, 1987, to September 8, 1992; (2) $1,500.00 per month for the period October 8, 1992, to September 8, 1997; (3) $1,700.00 per month beginning October 8, 1997, for month the later of 20 years or the life of Richard Young, that is, until the later of Richard Young's death or September 8, 2017; (4) a one-time payment of $50,000.00 on October 8, 2007; and (5) a one-time payment of $100,000.00 on October 8, 2017. *See* Interpleader Compl., ¶ 11 & Ex. 1.

[2] Because the parties all share the same last name, I will generally use given names to refer to the parties.

$184,500.00 remained payable under the annuity, consisting of monthly payments of $1,700.00 from September 8, 2010, through September 8, 2017, and the remaining $40,000.00 of the lump sum payment due on October 8, 2017. Virginia Young-Hicks, Thelma Young-Fuller, and the Estate each made claims to Monumental Life as beneficiaries of the annuity. *See id.*, ¶¶ 21, 23-25 & Ex. 9.

In light of the competing claims, ASSI and Monumental Life filed this interpleader action on December 16, 2010, naming as defendants Virginia Young-Hicks, Thelma Young-Fuller, and the Estate of Bernice Young, by and through personal representative Charles E. Young. Each of the named defendants filed a *pro se* response to the complaint. Although much of the dispute between Bernice's heirs appears to have been between Virginia and a number of Bernice's other sons and daughters, with respect to the annuity at issue here Virginia agrees in her answer that the annuity benefits should be divided equally among Bernice's ten adult children. The principal dispute, therefore, is between the Estate and Thelma. Thelma claims that she cared for Bernice during Bernice's illness, and that Bernice's intention was that she be the beneficiary of the annuity. In support of this claim, Thelma presents evidence that she was named as the beneficiary on other financial matters, including a life insurance policy. She also presents the statement of Barbara Young Redes, another of Bernice's children, who states that she witnessed Bernice naming Thelma as the beneficiary of the annuity in 1989, and that Bernice was mentally incompetent due to dementia by sometime in 2005.

On February 17, 2011, plaintiff filed a motion for leave to deposit the disputed funds into the Court's Registry, for discharge, and for an award of attorney fees. On February 24, 2011, the Court granted in part plaintiffs' motion, granting them leave to deposit the funds into the Court's Registry and reserving ruling on the other aspects of the motion. The Court referred the matter to

me on the same date. On March 24, 2011, the parties appeared for a hearing before me on the remaining aspects of plaintiffs' motion. Prior to the hearing, the parties agreed on a resolution of plaintiffs' motion which was placed on the record, and which resulted in an Order entered by the Court on March 28, 2011, which granted plaintiffs' request for discharge and awarded attorney fees in the amount of $10,000.00 to plaintiffs, to be awarded from the annuity benefits accruing after April 2011. Counsel for plaintiffs also spent several hours conferring with defendants in an attempt to mediate a settlement between them regarding the underlying annuity benefits, but the parties were unable to reach an agreement. On April 29, 2011, I held a pretrial conference, at which I invited the claimants to submit any documents in support of their claims.[3] Based on those documents, as well as the statements of the parties on the record at the March 24 hearing and their answers to the interpleader complaint, I recommend that the Court grant summary judgment and award the disputed annuity benefits to the Estate of Bernice Young.

B.  *Governing Law*

In an interpleader action, a party holding money or property to which it admittedly has no claim "sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265 (9th Cir. 1992). The purpose of an interpleader action is "to resolve competing rights and claims to the property and to protect the party holding the property from multiple liability and the expense of multiple suits." *Premier Trust, Inc. v. Duvall*, 559 F. Supp. 2d 1109, 1113 (D. Nev. 2008). As the Fifth Circuit has explained:

---

[3] The documents submitted by Charles Young on behalf of the Estate and by Thelma Young-Fuller were provided to my Chambers directly. I have instructed the Clerk to file these documents on the Court's docket.

> An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants.

*Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999); *see also*, *Aon Corp. Accidental Death & Dismemberment Plan v. Hohlweck*, 223 F. Supp. 2d 510, 514 (S.D.N.Y. 2002). Although an interpleader action is equitable in nature, in the second stage "the parties to such an action are entitled to a jury trial of the legal issues arising out of such action." *In re Larsen*, 172 B.R. 988, 991 (D. Utah 1993); *cf. Ross v. Bernhard*, 396 U.S. 531, 542 (1970). Nevertheless, "[w]hen there is no genuine issue of material fact the second stage may be adjudicated at summary judgment[.]" *Rhoades*, 196 F.3d at 600; *see also*, *Hohlweck*, 223 F. Supp. 2d at 514.[4]

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d

---

[4]The first stage is purely an equitable determination to be made by the Court. The Court, in granting plaintiffs' motion for discharge, has already determined that this action is appropriately brought as an interpleader action.

603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

Here, none of the defendants, all of whom are proceeding *pro se*, have moved for summary judgment under Rule 56. Nevertheless, it is well established "that a district court may enter summary judgment *sua sponte* in certain limited circumstances, so long as the losing party was on notice that it had to come forward with all of its evidence." *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (internal quotation omitted); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (explaining that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence"). Here, the parties were provided ample opportunity to present any evidence in support of their claims to the annuity benefits, and thus summary judgment is appropriate if that evidence fails to disclose any genuine issue of material fact.

The validity and effect of Bernice's beneficiary designations are governed by Michigan law. *See Hohlweck*, 223 F. Supp. 2d at 515. Under Michigan law, a designation of beneficiaries is presumed valid. A party challenging a change of beneficiaries as being the result of fraud or duress, or as having been made while the insured was mentally incompetent, bears the burden of proving fraud, duress, or mental incompetence. *See Chrysler Corp. v. Nohmer*, 319 Mich. 153, 156, 29 N.W.2d 149, 151 (1947); *Estate of Erickson v. Michigan Conference Ass'n of Seventh-Day Adventists*, 202 Mich. App. 329, 333, 508 N.W.2d 181, 183 (1993).[5] To establish undue influence, the party challenging the designation must show that the grantor "was subjected to threats,

---

[5]Although the cases cited herein did not all involve annuities, the Michigan courts apply the same standards to annuities as they do to bequests and insurance contracts. *See Mutual Life Ins. Co. of N.Y. v. Hughes*, 292 Mich. 644, 650, 291 N.W. 39, 41 (1940).

misrepresentations, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will." *Erickson*, 202 Mich. App. at 331, 508 N.W.2d at 182-83; *see also*, *In re Karmey Estate*, 468 Mich. 68, 75, 658 N.W.2d 796, 799 (2003). Importantly, "[m]otive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, is not sufficient." *Erickson*, 202 Mich. App. at 331, 508 N.W.2d at 183; *see also*, *Chrysler Corp.*, 319 Mich. at 163, 29 N.W.2d at 153 ("Mere opportunity to exert undue influence is not sufficient.").

"Similarly, the test to be applied in determining the mental competency of an insured at the time the insured attempts to effect a change of beneficiaries . . . is whether the insured then had sufficient mental capacity to understand the business in which the insured was engaged, to know and understand the extent of the insured's property, how the insured wanted to dispose of it, and who are dependent upon the insured." *Erickson*, 202 Mich. App. at 333, 508 N.W.2d at 183; *see also*, *Harris v. Copeland*, 337 Mich. 30, 34, 59 N.W.2d 70, 72 (1953). Under this test, "[a] person may be incapable of conducting his business successfully and still not be mentally incompetent." *Erickson*, 202 Mich. App. at 333, 508 N.W.2d at 183.

Finally, an "unexecuted intention to change the beneficiary is not sufficient to effectuate such a change." *Gignac v. Columbian Nat'l Life Ins. Co.*, 321 Mich. 201, 203, 32 N.W.2d 442, 443 (1948). For a valid change of beneficiary to occur, there must be substantial compliance with the method of changing the beneficiary provided for by the insurance contract or annuity. *See id*.

C. *Analysis*

Here, there are no genuine issues of material fact as between the Estate and Thelma. First, there is no evidence that Thelma was ever named as a beneficiary of the annuity. Although Thelma

asserts that Bernice told her she was being designated as the beneficiary, even if true this only shows that Bernice may have intended to name Thelma, not that she actually did so through the proper procedures set forth in the annuity contract. As noted above, an "unexecuted intention to change the beneficiary is not sufficient to effectuate such a change." *Gignac*, 321 Mich. at 203, 32 N.W.2d at 443. However, no party has produced a copy of the annuity or change of beneficiary form, nor provided any information as to the identity of the beneficiary prior to the August 2009 designation of the Estate, despite the fact that ASSI produced to Thelma a copy of its annuity file.

Second, there is no genuine issue of material fact with respect to whether the notarized change of beneficiary form executed by Bernice on August 5, 2009, was valid. There is no question that Bernice was, at this time, suffering from dementia. The question is whether Bernice was mentally incompetent in that she lacked sufficient mental capacity to understand the annuity and how she wanted to dispose of it. *See Erickson*, 202 Mich. App. at 333, 508 N.W.2d at 183. As the Michigan Supreme Court has explained, "[a] mentally incompetent person is one who is so affected mentally as to be deprived of sane and normal action." *In re Johnson's Estate*, 286 Mich. 213, 220, 281 N.W. 597, 600 (1938). The evidence presented by the parties fails to meet this threshold. On September 18, 2008, the Wayne County Probate Court determined that Bernice was competent. *See* Interpleader Compl., Ex. 4. Further, although the medical records submitted by the parties demonstrate that Bernice required assistance with the activities of daily living, they are unclear on whether, and to what extent, this assistance was required by her mental condition, as opposed to her physical condition. Most significantly, a cognitive functioning examination performed in September 2009, around the time of the beneficiary designation, noted that Bernice had some memory and cognitive problems that limited her ability to live independently and carry out the necessary

activities of daily living, but also noted that she "continues to possess some cognitive strengths and has the capacity to function semi-independently." *See* Answer of Virginia Young-Hicks, Ex. 3A. Because there is no evidence that Bernice lacked the ability to understand the annuity and how she wanted to dispose of it, the August 2009 change of beneficiary naming the Estate was valid, and thus the Estate is entitled to summary judgment.[6]

D.   *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact that the Estate is the rightful beneficiary of the annuity held by Bernice at the time of her death. Accordingly, the Court should grant summary judgment to the Estate.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation by filing written objections, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[6]Because Virginia Young-Hicks agrees that the annuity should go to the Estate, the Court need not consider whether the subsequent change of beneficiary to Virginia was valid.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/Paul J. Komives
                                          PAUL J. KOMIVES
                                          UNITED STATES MAGISTRATE JUDGE

Dated: 11/16/11

| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on November 16, 2011.  s/Eddrey Butts  Case Manager |
|---|